UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KENDRICK WILSON                                                                             PLAINTIFF

vs.                                            CIVIL ACTION NO. 3:19-CV-739-CRS

LOUISVILLE-JEFFERSON COUNTY
METROPOLITAN GOVERNMENT, et al.                            DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on the motion of the Defendant, Brett Hankison ("Hankison"), for summary judgment. DN 43, 43-1. Plaintiff, Kendrick Wilson ("Wilson"), filed a document entitled "Motion to Strike and Enter Default to Move Forward with a Settlement Conference," which we will treat as his response. DN 62. Hankison then filed a reply. DN 63. The matter is now ripe for review.

For the reasons stated herein, Hankison's motion for summary judgment will be granted.

**I. BACKGROUND**

Wilson, by counsel, filed a complaint against Louisville-Jefferson County Metro Government ("Louisville Metro Government") and Hankison in October 2019. DN 1. The Complaint alleges that Wilson encountered Hankison on three occasions—March 19, 2016, June 2, 2018, and October 14, 2018—in the vicinity of Tin Roof and Sullivan's Tap House on Shelbyville Road in Louisville, Kentucky. DN 1 at 4-9. According to Wilson, each interaction led to an arrest. DN 1 at 4-7. Based on these interactions, arrests, and other allegations involving the search of Wilson's residence and business, Wilson asserted four claims against Hankison and one claim against Louisville Metro Government. DN 1 at 11-19.

Louisville Metro Government moved to dismiss the municipal liability claim asserted against it, arguing that Wilson's Complaint did not allege a pattern of deliberately failing to investigate claims of unconstitutional conduct. DN 4-1 at 3-4. Following a review of the parties' briefs and consideration of controlling legal authority, the Court denied Louisville Metro Government's motion. DN 8 at 5.

The case continued to progress, and the Court referred the matter to Magistrate Judge Regina S. Edwards for "resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and disposition of all non-dispositive matters, including discovery issues." DN 14 at 2. Following the parties' Rule 26 initial disclosures, Wilson's counsel moved to withdraw based on a "material and irreparable breakdown in the attorney-client relationship." DN 17 at 1. Judge Edwards granted the motion and ordered Wilson to inform the Court of his intention to retain new counsel or proceed *pro se*. DN 23 at 1.

In August 2020, Sam Agular, Esq. began representing Wilson. DN 25. One month later, though, he moved to withdraw based on a "material and irreparable breakdown in the attorney-client relationship." DN 36 at 1. Judge Edwards granted attorney Agular's motion and instructed Wilson to notify the Court of his intention to retain new counsel or proceed *pro se*. DN 38 at 1.

Annie Malka, Esq. and Marylin Linsey Shrewsbury, Esq. entered their appearance on behalf of Wilson in November 2020. DN 39, 41. On November 19, 2020, Hankison filed the instant motion for summary judgment. DN 43. Attorneys Malka and Shrewsbury then moved for an extension of time to file a response because they had "not received [Wilson's] complete file from his former attorneys . . . ." DN 45 at 2. The Court granted the unopposed motion and set January 18, 2021 as the deadline for Wilson to respond to Hankison's motion for summary judgment. DN 49 at 1.

Roughly one month before the deadline to respond expired, attorneys Malka and Shrewsbury moved to withdraw as Wilson's counsel based on "irreconcilable differences between [them] and [] Wilson." DN 53 at 1, 54 at 1. Judge Edwards granted both motions and ordered Wilson to advise the Court of his intention to retain new counsel or proceed *pro se*. DN 57 at 1, 58 at 1.

Wilson notified Judge Edwards, in writing, of his intention to proceed *pro se* on January 25, 2021. DN 59 at 1. However, he did not file a timely response to Hankison's motion for summary judgment.

Upon review of the record, the Court issued an Order that provided Wilson another opportunity to respond to Hankison's motion for summary judgment because his attorneys withdrew during the time in which he had to respond. DN 61 at 1. Thereafter, Wilson timely submitted a document entitled "Motion to Strike and Enter Default to Move Forward with a Settlement Conference" and attached several exhibits in support of his claims. DN 62, 62-1, 62-2, 62-3, 62-4. Wilson's Response also requests the Court to strike Hankison's motion for summary judgment, enter default against Defendants, and order the parties to conduct a settlement conference. DN 62 at 1, 4.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In undertaking this analysis, the Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The party moving for summary judgment bears the burden of establishing the nonexistence of any issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party can

meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . . presence of a genuine dispute." Fed. R. Civ. P. 56 (c)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion." *St. v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Additionally, the Court acknowledges that *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'"). However, this standard does not apply to the instant case because Wilson's Complaint was drafted with the assistance of counsel and he is a nonprisoner *pro se* litigant. *See United States v. Ninety-Three Firearms*, 330 F.3d 414, 427 (6th Cir. 2003) ("The majority of circuits have held that a *pro se* litigant is entitled to notice of the consequence of a summary judgment motion . . . However, this court clearly has held that

4

no such rule providing 'special assistance' exists with respect to nonprisoner *pro se* litigants"); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988) (quoting *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir. 1986)) ("a 'litigant who chooses himself as a legal representative should be treated no differently'").

### III. ANALYSIS

In the Complaint, Wilson asserts four claims against Hankison arising from his arrest on October 14, 2018 for criminal trespass in the second degree and trafficking in a controlled substance in the first degree.[1] DN 1 at 11-19, DN 43-2. First, he claims that Hankison violated his Fourth Amendment rights by performing an arrest "under [] false pretenses" and with "excessive force." DN 1 at 12-13. Second, he claims that Hankison negligently exercised his "law enforcement powers to effectuate an unlawful arrest." DN 1 at 16. Third, Wilson asserts that he endured "severe and serious emotional injuries" as a result of "unlawful and repeated violat[ions] of [his] Constitutional rights." DN 1 at 16-17. Fourth, Wilson claims that Hankison "initiated a criminal proceeding . . . against [him] without probable cause." DN 1 at 18-19.

### A. 42 U.S.C. § 1983

Section 1983 establishes tort liability for the deprivation of federal rights by persons acting under color of state law. 42 U.S.C. § 1983. To state a claim under § 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

---

[1] Although Wilson's Complaint contains factual allegations relating to his arrest on March 19, 2016 and October 2, 2018, as well as the search of his residence and business on or about October 1, 2019, the Court declines to address these situations because the Complaint does not assert a cause of action against Hankison arising from these encounters.

### a. Unlawful Arrest

Wilson's first § 1983 claim alleges that Hankison "deprived [him] of his Constitutional rights by arresting him under [] false pretenses" because he "was not engag[ed] in any criminal conduct." DN 1 at 12. To prevail on a claim of unlawful arrest, "a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake, Ohio,* 412 F.3d 669, 677 (6th Cir. 2005). "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (en banc)). Under this standard, an officer can lawfully arrest an individual "so long as there is probable cause to arrest [him or] her for some crime, even if the crime for which there is probable cause is different from the stated crime of arrest." *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause").

Hankison contends that he is entitled to summary judgment because Wilson "admitted that [] Hankison had probable cause to arrest and charge Wilson for the underlying crime of criminal trespass when [Wilson] stipulated to the existence of [probable cause] in exchange for the dismissal of charges against him." DN 43-1 at 5. To support this contention, Hankison attached the docket sheet for the matter of Commonwealth v. Wilson, Case # 18-F-017843, which states that Wilson's charge for criminal trespass in the second degree was dismissed based on "*Stip Prob Cause*." DN 43-3 at 7.

Wilson's Response does not refute Hankison's contention or the evidence presented concerning his stipulation to probable cause. Although Wilson suggests that he has "reason to

6

believe that [Hankison] did not have probable cause for [the] arrest," neither his Response nor the exhibits he provided support this theory or controvert the arguments raised by Hankison.[2] DN 62 at 1. As Wilson has not provided the Court with any authority, evidence, or argument to support his claim, we conclude that probable cause existed for his arrest on October 14, 2018 and that Wilson waived opposition to the entry of summary judgment. *See Lewis-Smith v. W. Kentucky Univ.*, 85 F. Supp. 3d 885, 915 (W.D. Ky. 2015), aff'd (Jan. 12, 2016) (citing *Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008)) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived and grant the motion"). Therefore, Hankison's motion for summary judgment will be granted with respect to Wilson's claim for an alleged unlawful arrest.

### b. Excessive Force

Wilson's second § 1983 claim alleges that Hankison violated the Fourth and Fourteenth Amendment to the United States Constitution when he "carried out [the October 14, 2018 arrest] in a manner and with such a significant amount of unnecessary excessiveness that it shocks the conscience." DN 1 at 12-13. "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). In most cases, "that will be either the Fourth Amendment's prohibition against unreasonable seizures of the

---

[2] Wilson attached four exhibits to his Response. Exhibits A and B concern affidavits and search warrants involving individuals other than Wilson or Hankison. Exhibit C appears to be a narrative outlining how the search warrants discussed in Exhibits A and B violate Pennsylvania law. Exhibit D highlights Wilson's attempt to gain access to the warrant obtained prior to the search of his residence and business, but it does not include the warrants or reference Hankison. As such, the exhibits are not sufficient to create a genuine issue as to any material fact.

person, or the Eighth Amendment's ban on cruel and unusual punishments." *Id*. The Sixth Circuit has further explained that:

> The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that arise in the context of an arrest or investigatory stop of a free citizen, while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences. When neither the Fourth nor the Eight Amendment serves to protect citizens, courts have applied the Fourteenth Amendment. . . . [W]hich amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between.

*Aldini v. Johnson*, 609 F.3d 858, 864-65 (6th Cir. 2010) (internal citation and quotation marks omitted).

Whether an officer's use of force in effectuating an arrest violates the Fourth Amendment turns on "whether [an] officer['s] actions [were] objectively reasonable in light of the facts and circumstances confronting [the officer], without regard to [his or her] underlying intent or motivation." *Graham*, 490 U.S. at 397. In undertaking this analysis, a court must balance three factors: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Hicks v. Scott*, 958 F.3d 421, 435 (6th Cir. 2020) (quoting *Graham*, 490 U.S. at 396).

Here, Wilson's Response does not refute the arguments raised in Hankison's motion for summary judgment or address the force used by Hankison during the October 14, 2018 arrest. Although Wilson's Complaint alleges that Hankison "aggressively kicked [his] legs apart when he began the pat down," he fails to proffer any evidence of this allegation to demonstrate that there is a material dispute or cite any authority to indicate that courts within the Sixth Circuit have found conduct similar to that allegedly utilized by Hankison as excessive. *See McPherson v. Kelsey*, 125

8

F.3d 989, 995 (6th Cir. 1997) (citing *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293–94 (1st Cir. 1995)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones"). Therefore, Hankison's motion for summary judgment will be granted with respect to Wilson's claim for the alleged use of excessive force.

### B. State Law Claims

#### a. Negligence

Wilson's first state law claim alleges that Hankison was negligent in performing the October 14, 2018 arrest "by using an unreasonable exercise of his law enforcement powers to effectuate an unlawful arrest and search." DN 1 at 16. Under Kentucky law, a negligence claim requires four elements: "(1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty of care; (3) a causal connection between the defendant's conduct and the plaintiffs damages; and (4) damages." *Gonzalez v. Johnson*, 581 S.W.3d 529, 532 (Ky. 2019), as modified on denial of reh'g (Sept. 26, 2019). However, this Court has stated that "[a] plaintiff cannot support a claim for negligence or gross negligence with the same factual allegations as a false arrest or malicious prosecution claim because it would allow the plaintiff to circumvent the higher standards associated with those intentional torts." *Harmon v. Harper*, No. 3:19-CV-823-CRS, 2020 WL 3013890, at *4 (W.D. Ky. June 4, 2020); *see also Ali v. City of Louisville*, No. 3:03CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006) ("[W]here an unwanted touching (a battery), which is inherent in any arrest, escalates beyond that which is reasonably necessary into excessive force, the cause of action is solely for battery, with the officer's privileged use of force ending when the excessive force began. To permit a separate claim for negligence

9

creates the risk that a jury would assume that, even if no excessive force were used, the officer might somehow still be liable for some undefined negligence").

Here, even when the evidence is viewed in the light most favorable to Wilson, his common law negligence claim fails as a matter of law because the record does not indicate this claim arises from allegations that are distinct from his unlawful arrest claim. Further, Wilson's Response fails to proffer any authority or argument to support a contrary finding. Therefore, Hankison's motion for summary judgment will be granted with respect to Wilson's claim for negligence under Kentucky law.

### b. IIED/NIED

Wilson next state law claim asserts that Hankison is liable for intentional inflection of emotional distress ("IIED"), commonly referred to as the tort of outrage, or, in the alternative, negligent infliction of emotion distress ("NIED"). DN 1 at 16-17. To sustain a claim for IIED under Kentucky law, "the following elements must be proved: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress must be severe." *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999). For conduct to be considered intentional or reckless the defendant must have had the "specific purpose of causing emotional distress [] or intended a specific conduct and knew or should have known that it would cause emotional distress rather than a personal (physical) injury." *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, . . . and utterly intolerable

in a civilized community." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (citing Restatement (Second) of Torts, § 46 cmt. d (1965)).

Here, Wilson's IIED claim fails as a matter of law. Wilson's stipulation that probable cause existed for his arrest on the underlying charge of criminal trespass in the second degree prevents recovery because Hankison's actions cannot properly be found to have been undertaken for the purpose of causing emotional injury or knowing that it would cause emotional distress. *See Pennington v. Dollar Tree Stores, Inc.*, 104 F. Supp. 2d 710, 715 (E.D. Ky. 2000), aff'd, 28 F. App'x 482 (6th Cir. 2002) ("The admission that probable cause existed defeats the argument that the defendants acted in a reckless manner"). Further, Wilson fails to provide any evidence or authority to demonstrate that Hankison's conduct meets the threshold for outrageousness or that his alleged emotional distress was sufficiently severe.

Similarly, Wilson's NEID claim cannot survive summary judgment. Kentucky law requires a plaintiff asserting an NIED claim to "present evidence of the recognized elements of a common law negligence claim: (1) the defendant owed a duty of care to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury," and also present, by "expert medical or scientific proof," a "severe or serious emotional injury." *Osborne v. Keeney*, 399 S.W.3d 1, 17-18 (Ky. 2012). Yet, Wilson's Response lacks any expert proof of his emotional injuries or arguments in opposition to those raised in Hankison's motion for summary judgment regarding the consequences of Wilson's stipulation to probable cause. Therefore, Hankison's motion for summary judgment will be granted with respect to Wilson's claim for IIED and/or NIED.

   **c. Malicious Prosecution**

Wilson's final state law claim alleges that Hankison is liable for malicious prosecution because he "initiated a criminal proceeding on October 14, 2018 . . . without probable cause, as he had no reason to believe [] Wilson was trespassing on Sullivan Tap Houses' property." DN 1 at 19. A malicious prosecution claim under Kentucky law is like a claim for malicious prosecution under 42 U.S.C. § 1983. To succeed on the state law claim, a plaintiff must establish that "(1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding . . . against the plaintiff; (2) the defendant acted without probable cause; (3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice . . .; (4) the proceeding . . . terminated in favor of the person against whom it was brought; and (5) the plaintiff suffered damages as a result of the proceeding." *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016), as corrected (Sept. 22, 2016).

Here, Wilson's claim for malicious prosecution fails as a matter of law. Again, even when the evidence is viewed in the light most favorable to Wilson, the record reveals that Hankison had probable cause to arrest and charge Wilson with the underlying crime of criminal trespass in the second degree because Wilson stipulated to the existence of probable cause. DN 43-3 at 7. Further, Wilson failed to provide the Court with any authority discussing whether a finding of probable cause on one charged offense precludes a state malicious prosecution claim on the remaining charges or refute the arguments raised by Hankison. Therefore, Hankison's motion for summary judgment regarding this claim will be granted considering that Wilson fails to create a genuine issue of material fact as to whether Hankison acted without probable cause.

## IV. CONCLUSION

For the reasons discussed herein, Hankison's motion for summary judgment will be granted by separate order. We also note that the relief requested in Wilson's Response, namely that the

Court strike Hankison's motion for summary judgment, enter default, and instruct the parties to conduct a settlement conference, is denied.[3]

April 27, 2021

Charles R. Simpson III, Senior Judge
United States District Court

---

[3] Wilson's Response fails to explain what the Court should strike from Hankison's motion, how the Defendants are in default, or why a settlement conference at this stage of the proceeding should be required. Further, Wilson's Response declines to provide any authority or argument addressing the Court's ability to consider his requests in the context of a response to a motion for summary judgment.